IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **SYCAMORE INDUSTRIAL PARK ASSOCIATES,** an Illinois general partnership, | ) ) ) |
| **Plaintiffs,** | ) ) |
| | ) No. 06 C 0768 |
| v. | ) ) |
| | ) HONORABLE DAVID H. COAR |
| **ERICSSON, INC.,** a Delaware corporation, | ) ) |
| **Defendant.** | ) |

**MEMORANDUM OPINION AND ORDER**

Sycamore Industrial Park Associates ("SIPA") filed a civil action against Ericsson, Inc. ("Ericsson") under the Comprehensive Environmental Response, Compensation and Liability Act (the "CERCLA"), codified at 42 U.S.C. §9601 *et seq.*, 26 U.S.C. §§4611- 4612, 4661- 4662 (2006) and the Resource Conservation and Recovery Act (the "RCRA"), codified at 42 U.S.C. §6901 *et seq.* (2006) to compel Ericsson to remove asbestos located at a site SIPA purchased from Ericsson; to pay SIPA recovery costs that SIPA incurred or will incur in removing the asbestos; to pay a civil fine for each day Ericsson violated and continues to violate RCRA and the Illinois Environmental Protection Act; and other additional remedies. SIPA also brings Illinois common law claims of nuisance and negligence against Ericsson and seeks damages, restitution of all costs incurred by SIPA in the remediation of the site and an injunction to remove and abate the nuisance of asbestos. Ericsson now moves for summary judgment on all claims of the Complaint and SIPA moves for partial summary judgment on its RCRA and

CERCLA claims. For the reasons stated in the opinion below, Ericsson's motion is GRANTED in part, and SIPA's motion is DENIED.

I.   UNDISPUTED FACTUAL BACKGROUND

On May 30, 1985, Ericsson sold Michael Kreiger, an Ericsson employee until sometime in or around May 1985, an industrial park (the "Site") complete with finished buildings on 28 acres of land. Once the transaction closed Kreiger contemporaneously assigned his interests in the Site to SIPA. In his capacity as an Ericsson employee, Kreiger was in charge of preparing the Site for sale. Ericsson used a boiler-based heating system to provide heat throughout the buildings on the Site. The boiler-based system consists of boilers, pipes and other equipment containing asbestos insulation. The boilers are large mechanical units, structurally anchored to the floor of the buildings which house them at their bases, and are otherwise attached to the buildings through pipe runs. The pipe network that distributed heat is also physically attached to the boilers, and physically attached to the various buildings to and through which they run. Most of the pipe network runs near the ceilings of the several buildings, connected to the structures at intervals by metal fasteners or supports. The pipe network of the steam boiler system runs for thousands of linear feet through the structures comprising the Site.

Before eventually selling the Site to Kreiger, Ericsson leased part of the property to UARCO in December of 1984. Until January 1985, the complete boiler-based heating system was providing heat to the buildings of the Site. However, in the winter seasons of 1983 and 1984, the boiler-based system was working with increasing difficulty. When UARCO moved onto the Site in January 1985, Ericsson discontinued use of the boiler-based system in UARCO's buildings and began using a new non-asbestos containing heating system. Ericsson never

removed the old heating system. Neither Krieger nor SIPA requested Ericsson to remove the old system. Despite the fact that the sales contract between Ericsson and Krieger states the purchase consists of "all parcels, buildings and improvements thereon,... together with all rights, titles, interests, hereditaments and appurtenances relative thereto, personal property, fixtures,... if any," SIPA claims it did not purchase the boiler system. According to Kreiger, he concluded in April 1985 that the boiler system was garbage and had to be shut down. He stated that Robert Boey, an Ericsson engineer in charge of determining how to provide heat to the Site's buildings and who reported to Kreiger, came to this conclusion in September 1983. Ericsson obviously concluded at some point that it was not economically reasonable to maintain, repair or operate the boiler-based system and so it ceased its use. Although the parties dispute what roles Krieger and Boey occupy in SIPA, it is undisputed that both former Ericsson employees are affiliated with SIPA in some capacity.

SIPA now claims that by discontinuing use of the boiler-based heating system containing asbestos insulation but not removing it from the Site, Ericsson abandoned it, thereby disposing of hazardous waste under the terms of CERCLA and RCRA. SIPA also claims that the old heating system is a common law nuisance and that leaving the system was an act of negligence that continues to harm SIPA.

## II. STANDARD FOR MOTIONS FOR SUMMARY JUDGMENT

Summary judgment will be granted only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. Pro. 56(c). A genuine issue of material fact exists only if there is

sufficient evidence for a reasonable finder of fact to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it can affect the outcome of the case under the applicable substantive law. *Id.* When reviewing a motion for summary judgment, the court must view the facts in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Schuster v. Lucent Tech. Inc.*, 327 F.3d 569, 573 (7th Cir. 2003).

The movant bears the burden of establishing that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant meets this burden, the non-movant must set forth specific facts demonstrating that there is a genuine issue for trial. Fed. R. Civ. Pro. 56(e); *Celotex*, 477 U.S. at 324. To successfully oppose the motion, the non-movant must designate these facts in affidavits, depositions, answers to interrogatories, or admissions; the non-movant cannot rest on the pleadings alone. *Celotex*, 477 U.S. at 324.

## III. ANALYSIS

### CERCLA Claim

Liability under CERCLA is established when the following four elements are met: (1) the site in question is a "facility" as defined by CERCLA; (2) the Defendant is a "responsible person" as defined by CERCLA; (3) there was a "release or threatened release" of hazardous substances; and (4) such release caused the Plaintiff to incur response costs. *Envtl. Transp. Sys., Inc. v. ENSCO, Inc.*, 969 F.2d 503, 506 (7th Cir. 1992) (citations omitted); *3550 Stevens Creek Assocs. v. Barclays Bank*, 915 F.2d 1355, 1358 (9th Cir.1990). In *G. J. Leasing Co. v. Union Electric Company*, a purchaser of a decommissioned power plant containing asbestos in its structure sued a former owner under CERCLA. 54 F.3d 379 (7th Cir. 1995). The Court held

that "the sale of a product which contains a hazardous substance cannot be equated to the disposal of the substance itself or even the making of arrangements for its subsequent disposal…" *Id*. at 384. SIPA attempts to evade the holding of *G.J. Leasing* by recasting its claim to the effect that Ericsson unlawfully disposed of asbestos when it stopped using a functionally obsolete heating system containing asbestos insulation out of service and left it on a site that it later sold. In *G.J. Leasing*, the entire facility was obsolete and useless and had thus been decommissioned and rendered dormant by the owner. 54 F.3d at 382. It was then sold to a salvager. *Id*. The Court recognized that the presence of asbestos played no role in the decision to decommission the facility. *Id*. Similarly, SIPA does not claim nor has it offered any evidence that the asbestos insulation on the boiler-based heating system motivated Ericsson to cease its use. Instead, SIPA continuously focuses on the fact that the boiler-based system was inoperable junk that was not worth the trouble of maintaining or repairing.

In *3550 Stevens Creek Associates*, the Ninth Circuit declined to recognize a private cause of action under Section 107(a) of CERCLA for the voluntary removal of asbestos from a commercial building. 915 F.2d at 1365. After conducting a thorough analysis of the relevant sections and subsections of CERCLA and the Solid Waste Disposal Act, as amended by the RCRA, from which the definitions of certain terms used by CERCLA and RCRA are taken, the Court held that the *installation* of asbestos containing materials into a building did not amount to disposal of waste materials such that the plaintiff could pursue a CERCLA private cause of action against an owner of a commercial building. *Id*. The Court stated that "[o]n its face "disposal" pertains to 'solid waste or hazardous waste,' not to building materials which are neither." 915 F.2d at 1361. The Court also found that CERCLA's legislative history was devoid

of evidence of a congressional intent to permit private causes of action for the recovery of response costs for the removal of asbestos from buildings. *Id*. at 1365.

SIPA attempts to distinguish *3550 Stevens Creek Associates* on the basis that the asbestos there was in operation as a useful product in the structure. Here, the asbestos in question belongs to a heating system no longer in use by the time Ericsson sold the Site.[1] SIPA argues that the boiler system was inoperable and useless. By leaving the inoperable old asbestos-laden system where it had been originally installed, SIPA argues that Ericsson disposed of it because it is "solid waste," i.e. "discarded material" under the statutory scheme.

The *3550 Stevens Creek Associates* court unambiguously held that building materials installed into the structure was not "placing into or on any land and water." *Id*. at 1362. If the action of installing materials into a structure is not "placing into or on any land and water," then abandoning materials within a structure, that is leaving the materials in place within the building, cannot be "placing into or on any land and water" either. SIPA attempts to confuse the issue by arguing that the asbestos here is not built into the structure of the Site, but the undisputed facts demonstrate that the asbestos is attached to the pipes and boilers, which are in turn attached to the various buildings of the Site.

This Court's decision that the system is not "solid waste" does not ignore the language of the statute, contradict Seventh Circuit precedent or frustrate the fundamental purposes of CERCLA. Title 42 U.S.C. § 6903(3) provides that "'disposal' means the discharge, deposit, injection, dumping, spilling, leaking, or placing of any solid waste or hazardous waste into or on

---

[1] Whether or not the heating system was operable at the time of the sale is a disputed fact that the Court resolves in favor of SIPA for purposes of this motion only.

any land or water so that such solid waste or hazardous waste or any constituent thereof may enter the environment or be emitted into the air or discharged into any waters, including ground waters." Ericsson did not place the asbestos materials anywhere. Although courts have held that the term "disposal" contains a passive element that must not be ignored, the term is not so broad as to render an owner liable for merely discontinuing use of equipment that is physically attached to otherwise useful realty.

The Seventh Circuit stated in *G. J. Leasing Co. v. Union Electric Company* that although "asbestos is a hazardous substance within the meaning of CERCLA,... asbestos is harmless as long as the asbestos fibers are not allowed to leak out of the walls or other building components in which the insulation was placed." 54 F.3d at 385. Apparently, SIPA took note of this fact because it asserts in its materials that the asbestos in question may be friable.[2] However, the *G.J. Leasing Co.* court also explained that "the release of asbestos inside a building, with no leak outside... is not governed by CERCLA." *Id*. (citations omitted.). It is apparent from the facts SIPA chose to present in these proceedings that it has no evidence that asbestos is being released "into the environment" within the meaning of CERCLA.[3] Asbestos "released" within a

---

[2] Yet, SIPA also points out in its materials that the asbestos is in place and remains intact.

[3] Thus, assuming *arguendo* that the asbestos-laden boiler system is "solid waste" under 42 U.S.C. § 6903(27) as SIPA contends, abandoning a heating system within a series of buildings would probably still not satisfy the definition of "disposal" under 42 U.S.C. § 6903(27) because such action does not come within the scope of the phrase "placing of [the abandoned contaminant] into or on any land or water so that [the abandoned contaminant] or any constituent thereof may enter the environment or be emitted into the air or discharged into any waters, including ground waters." *See 3550 Stevens Creek Assocs.*, 915 F.2d at 1361. The statute defines "release" as "any spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, dumping, or disposing into the environment (including the abandonment or discarding of barrels, containers, and other closed receptacles containing any hazardous substance or pollutant or contaminant)...." 42 U.S.C. § 9601(22). The statute further

building or several buildings is not equivalent to being "released" into the environment. *See Covalt v. Carey Canada Inc.*, 860 F.2d 1434, 1436-37 (7th Cir. 1988).

Ultimately, determining whether a "disposal" occurred requires this Court to return to the meaning of "solid waste." According to 42 U.S.C. § 6903(27), "solid waste" is "any garbage, refuse, sludge from a waste treatment plant, water supply treatment plant, or air pollution control facility and other discarded material...." The Site is an industrial park, not a waste treatment plant, water supply treatment plant, or air pollution control facility. Therefore, the relevant question is whether SIPA provided facts from which a reasonable factfinder can conclude Ericsson "discarded" or abandoned the materials within the meaning of the statute. This Court finds as a matter of law, under the facts presented in these summary judgment proceedings, Ericsson neither discarded or abandoned the asbestos materials. The materials here were attached to the buildings that made up the Site as insulation on pipes, boilers, and other equipment. The only way that Ericsson could have discarded or abandoned the boiler system and the asbestos materials within the meaning of CERCLA is if it discarded or abandoned the entire Site itself or detached the system or asbestos materials and left them on the premises. Ericsson did no such thing; it simply stopped using the old system, installed a new system and then sold the Site. The fact that Ericsson, as a tenant/lessee responsible for its own heat, chose

---

defines "environment" as "(A) the navigable waters, the waters of the contiguous zone, and the ocean waters of which the natural resources are under the exclusive management authority of the United States under the Fishery Conservation and Management Act of 1976, and (B) any other surface water, ground water, drinking water supply, land surface or subsurface strata, or ambient air within the United States or under the jurisdiction of the United States." 42 U.S.C. § 9601(8). SIPA has not introduced evidence from which a reasonable factfinder could conclude the asbestos containing materials at issue here have been released into the environment. Its evidence merely consists of denigrations of Ericsson's "expert" testimony and the fact that some of the pipes may be underground and others, covered by chases, extend outside between buildings.

not to operate the old boiler-based system, and instead utilized a gas-based system, does not in anyway impact this Court's conclusion that no disposal of hazardous waste took place. SIPA concedes that at according to its basic everyday usage, the term "disposal" means the act or process of getting rid of something. The facts unambiguously demonstrate that Ericsson took no actions, not a single step, towards ridding itself of the boiler-based system.

This Court concludes that under the current definitions utilized by CERCLA, there is no genuine issue of material fact from which a reasonable factfinder could conclude Ericsson is liable for the disposal of asbestos at the Site.

## RCRA Claim

Ericsson contends that SIPA's RCRA claim should also be dismissed. It argues that since the definition of "disposal" is the same under CERCLA and RCRA, CERCLA case precedent compels the logical conclusion that Ericsson's conduct as alleged in the Complaint does not fall within the ambit of RCRA. SIPA responds that the scope of conduct that falls under the purview of RCRA is broader than mere "disposal."

To establish a *prima facie* imminent hazard citizen suit claim under RCRA, a plaintiff must allege (1) that the defendant has generated solid or hazardous waste, (2) that the defendant is contributing to or has contributed to the handling, storage, disposal, treatment or transportation of this waste, and (3) that this waste may present an imminent and substantial danger to health or the environment. 42 U.S.C. §6972(a)(1)(B); *Albany Bank & Trust Co. v. Exxon Mobil Corp.*, 310 F.3d 969, 972 (7th Cir. 2002) (citations omitted). RCRA amended certain provisions of the Solid Waste Disposal Act. *See* 42 U.S.C. §6901 *et seq*.

As discussed before, the RCRA defines "solid waste "as meaning "any garbage, refuse, sludge from a waste treatment plant, water supply treatment plant, or air pollution control facility and other discarded material...." 42 U.S.C. §6903(27). This Court concluded above that "discarded material" could not include materials fixed to a building itself, unless the building was discarded or the materials were detached from the building and left on the premises. There is no reason to deviate from that conclusion under RCRA.

In *Remington Arms Company*, after reviewing the legislative history of RCRA, the Second Circuit held that the statute was designed to "regulate discarded material and hazardous wastes" and to also deal with products that had "served their intended purposes and are no longer wanted by the consumer." 989 F.2d 1305, 1314. While SIPA has presented facts from which a reasonable factfinder could conclude that Ericsson regarded the heating system as having served its intended purpose of providing heat and it was no long desired for that purpose (as evidenced by the use of a new heating system), SIPA cannot demonstrate that the boiler-based system was "discard material" under RCRA. The *Remington Arms Company* decision and the cited corresponding legislative history clearly show that when Congress mentioned that the term "solid waste" included products that no longer served their intended purposes and were no longer wanted by the customer, it was in fact referring to the factors of production in this nation's industries' various manufacturing processes, not to obsolete building materials in an otherwise useful building. H.R. NO. 94-1491, pt. 1, at (1976), *as reprinted in* 1976 U.S.C.C.A.N. 6238, 6240 ("It is not only the waste by-products of the nation's manufacturing processes with which the committee is concerned; but also the products themselves once they have served their intended purposes and are no longer wanted by the consumer").

Nor do the asbestos-containing heating materials at issue here satisfy RCRA's definition of "hazardous material." Discarded materials must first be solid materials in order to be included within the subset of "hazardous materials." Section 6703(5). This Court concludes that the term "solid waste" utilized by RCRA can not and does not include the discontinued use of a boiler-based heating system left in the same place where originally affixed on a building structure unless it is alleged that the building itself is discarded. Since SIPA cannot provide facts from which a reasonable factfinder could conclude Ericsson discarded the Site itself, summary judgment is granted to Ericsson on the RCRA claim.

### Supplemental Claims of Nuisance and Negligence

Having granted Ericsson summary judgment on the issues of whether it violated CERCLA and RCRA when it left a discontinued heating system containing asbestos in place in and throughout several buildings later transferred to SIPA, this Court declines to exercise supplemental jurisdiction over the state law claims of nuisance and negligence. Those claims are hereby dismissed without this Court expressing any opinion as to the merits of either claim.

### IV.     CONCLUSION

For the foregoing reasons, Ericsson's Motion for Summary Judgment is GRANTED in part. SIPA's Motion for Partial Summary Judgment is DENIED. This Court declines to exercise supplemental jurisdiction over SIPA's state law claims and dismisses them without expressing any opinion as to their merit.

Enter:

/s/ David H. Coar
David H. Coar
United States District Judge

Dated: **January 9, 2007**